IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHARLES KEITH WAMPLER,

        Petitioner,      :      Case No. 3:24-cv-248

- vs -                            District Judge Thomas M. Rose
                                      Magistrate Judge Michael R. Merz

WARDEN, London Correctional
  Institution,

                                             :
        Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus action pursuant to 28 U.S.C. § 2254 brought *pro se* by Petitioner Charles Wampler to obtain relief from his convictions in the Montgomery County Court of Common Pleas for aggravated murder, rape, abduction, and abuse of a corpse (Petition, ECF No. 1). On the Court's Order, the Respondent has filed the State Court Record (ECF No. 3) and a Return of Writ (ECF No. 4). Petitioner then filed a timely Traverse (ECF No. 6), making the case ripe for decision.

**Litigation History**

On May 11, 1982, a Montgomery County grand jury indicted Petitioner on one count of aggravated murder in violation of Ohio Revised Code § 2903.01(B) (Count 1), two counts of rape in violation of Ohio Revised Code § 2907.02(A)(1) (Counts 2-3), one count of abuse of a corpse in

1

violation of Ohio Revised Code § 2927.01(B) (Count 4), and one count of abduction in violation of Ohio Revised Code § 2905.02(A)(2) (Count 5).[1] A trial jury convicted Wampler of aggravated[2] murder, rape, abuse of a corpse, and abduction. The trial court merged the abduction and rape convictions and sentenced Wampler to consecutive terms of life in prison for the aggravated murder, an indefinite seven to twenty-five years for the rape, and an indefinite two-to-five-year prison term for the abuse of a corpse.

With the assistance of counsel, Wampler appealed to the Ohio Court of Appeals for the Second District which affirmed. *State v. Wampler*, Case No. CA-7965 (Ohio App. 2d Dist. Nov. 10, 1983)(unreported; copy at State Court Record, ECF No. 3, Ex. 15). Wampler appealed to the Supreme Court of Ohio which dismissed the appeal on a finding that no substantial constitutional question existed in the case (Entry, State Court Record, ECF No. 3, Ex. 17).

On December 20, 2021, Wampler filed an Application for Delayed Reopening of his direct appeal under Ohio R. App. P. 26(B) to raise claims of ineffective assistance of appellate counsel (Application, State Court Record, ECF No. 3, Ex. 25). The Second District dismissed the Application because Wampler "failed to demonstrate good cause for the nearly four-decade delay in filing his application to reopen." (Entry, State Court Record ECF No. 3, Ex. 28). The Ohio Supreme Court declined jurisdiction over an appeal. *State v. Wampler* (Entry, State Court Record, ECF No. 3, Ex. 31).

Although charged and tried as an adult, Wampler was, many years later, granted a resentencing to allow the Common Pleas Court to consider his age at the time of the offense. On July 7, 2023, Wampler was re-sentenced by Judge Mary Wiseman on the aggravated murder, rape, and abuse of

---

[1] Inexplicably, the Return of Writ alleges an indictment in the Erie County grand jury in March 1989 (Return, ECF No. 4, PageID 2229). The case was originally assigned to The Honorable Carl D. Kessler of the Montgomery County Court of Common Pleas and later transferred to The Honorable John Webster Kessler, also of that court. It is important not to confuse the two men as the voters in the November, 1980, general election apparently did.
[2] Again inexplicably, the Return of Writ refers to a conviction for attempted murder. *Id.*

2

corpse convictions, with only the murder sentence remaining to be served (Amended Termination Entry, State Court Record, ECF No. 3, Ex. 44). The Second District affirmed (*Id.* at Ex. 59) and Wampler did not appeal to the Supreme Court of Ohio.

Wampler filed his first petition for a federal writ of habeas corpus in this Court on June 21, 2022 (*Wampler v. Warden*, Case No. 3:22-cv-00174). On recommendation of the undersigned that case was dismissed without prejudice to refiling after the resentencing proceedings were completed (Decision and Entry, State Court Record ECF No. 3, Ex. 53). The Sixth Circuit denied Wampler a certificate of appealability (*Id.* at Ex. 54) and he did not seek certiorari.

Wampler filed the instant Petition on September 6, 2024, by depositing it in the prison mail system on that date (Petition, ECF No. 1, PageID 51). He pleads the following Grounds for Relief:

> **Ground One**: Prosecutorial Misconduct: Prosecutors violated petitioner's 5th., 8th., 13th., and 14th. Amendment rights by introducing facts not in evidence to inflame, and confuse, the jury into delivering an unjust verdict.
>
> **Ground Two**: Prosecutorial Misconduct: Prosecutors violated petitioner's 5th., 8th., 13th., and 14th. Amendment rights by introducing inflammatory, and misleading, statements which infected the entire proceeding.
>
> **Ground Three:** Prosecutorial Misconduct: Prosecutors violated petitioner's 5th., 8th., 13th., and 14th. Amendment rights by introducing perjured testimony to obtain an unjust conviction.
>
> **Ground Four:** Prosecutorial Misconduct: Prosecutors violated petitioner's 5th, 8th, 13th, and 14th Amendment rights by withholding exculpatory evidence from the defense.
>
> **Ground Five**: Prosecutorial Misconduct: Prosecutor violated petitioner's 5th, 8th, 13th and 14th Amendment rights by prosecutor Robert D. Head prosecuting the case.
>
> **Ground Six**: Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when counsel failed to point out, to the jury, that there was no evidence of rape.

**Ground Seven**: Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when defense counsel failed to ask pertinent questions of Coroner.

**Ground Eight**: Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when defense counsel failed to object to Coroner's blood alcohol testimony.

**Ground Nine**: Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when defense counsel failed to challenge the flaws in Joey Shipman's testimony.

**Ground Ten**: Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when defense counsel failed to object to the many inflammatory/misleading statements made by prosecutors.

**Ground Eleven**: Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when defense counsel failed to subpoena Michael Johnson.

**Ground Twelve**: Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when defense counsel failed to interview or subpoena Jack Joyce.

**Ground Thirteen:** Ineffective Assistance of Trial Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when defense counsel failed to ca;; a single expert witness or present any serious defense.

**Ground Fourteen**: Judicial Misconduct: Trial judge violated petitioner's 5th, 6th, 8th, 13th, and 14th Amendment rights by being blamed in favor of prosecutor Robert D. Head.

**Ground Fifteen:** The Trial Court Erred: The trial court violated petitioner's 5th, 6th, 8th, 13th, and 14th Amendment rights by not addressing the ineffectiveness of counsel appointed by the court.

**Ground Sixteen:** Trial Court Erred: Petitioner's 5th., 8th., 13th., and 14th. Amendment rights were violated when the trial court allowed petitioner's conviction to stand when there was insufficient evidence to support the conviction.

**Ground Seventeen:** Ineffective Assistance of Appellate Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when appellate counsel failed to even meet with petitioner.

4

>**Ground Eighteen:** Ineffective Assistance of Appellate Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when appellate counsel failed to raise the issue that trial counsel had been prevented from raising Michael Johnson as a suspect.
>
>**Ground Nineteen**: Ineffective Assistance of Appellate Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when appellate counsel failed to thoroughly investigate the facts of the case.
>
>**Ground Twenty**: Ineffective Assistance of Appellate Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when appellate counsel failed to raise Prosecutorial Misconduct.
>
>**Ground Twenty-One**: Ineffective Assistance of Appellate Counsel: Petitioner's 5th., 6th., and 14th. Amendment rights were violated when appellate counsel failed to raise Ineffective Assistance of Trial Counsel.

(Petition, ECF No. 1, PageID 6-46).

## Analysis

Petitioner pleads twenty-one grounds for relief to which Respondent offers a variety of procedural defenses. Wampler begins his Traverse by asserting those defenses should be ignored:

>In his petition for habeas corpus relief petitioner listed twenty-one grounds for relief. Respondent does not contest the veracity of a single one of these grounds. What respondent does is ask this honorable Court to ignore these many Constitutional violations and dismiss this petition on procedural grounds.
>
>In the following pages petitioner will explain why he believes this honorable Court should allow him to pass through the fundamental miscarriage of justice gateway and have this case judged on the merits.

(ECF No. 6, PageID 2262).

The Supreme Court has held that a habeas petitioner can overcome procedural defaults by

5

presenting new evidence of actual innocence. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit anticipated *McQuiggin* by holding Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception." The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner

> guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

> '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whiteley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). And in the "gateway" context, our court has said the same thing. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself. This distinction between exonerating evidence and impeachment evidence undergirds both of the Supreme Court's landmark equitable-exception cases. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *House*, 547 U.S. at 552–53, 126 S.Ct. 2064.

*Hubbard v. Rewerts,* 98 F.4th 736 (6th Cir. 2024).

The first new evidence to which Wampler adverts is an interview in April, 2024, with Joseph Shipman by private investigators (Traverse, ECF No. 6, PageID 2270). The investigators report that Mr. Shipman refused to be recorded and their report of their interview does not show whether they ever requested Shipman to swear to his answers under oath (ECF No. 6, Appendix A, PageID 2287-88). The investigator's report is not sworn to. The content of Shipman's comments does not show his testimony was perjured or that anyone acting on behalf of the prosecution attempted to suborn perjury from him. And of course the investigator was asking

7

Shipman to recall events occurring more than forty years ago. The April 2024 statement by Shipman is not reliable new evidence of actual innocence of the sort required by *Schlup*.

Wampler next argues that the testimony regarding his having drunk half a bottle of vodka with the victim is not credible, given how much was testified to having been drunk by others (Traverse, ECF No. 6, PageID 2270-71). No new evidence is adverted to here. And the question of the credibility of the testimony was an issue for the jury in 1982, not the federal court in 2024.

Wampler argues next that the Court should apply "simple common sense logic" to reject the testimony that one of Wampler's hairs was found on the victim's exposed calf. *Id.* at 2272. A federal habeas corpus court cannot rely on "simple common sense logic" to reject a finding of fact implicit in a jury's verdict and affirmed by the Second District Court of Appeals. There is no new evidence presented of the sort required by *Schlup* to prove actual innocence.

Wampler's additional arguments to prove actual innocence (PageID 2272-80) are of the same character: arguments about appropriate inferences to be drawn from evidence presented at trial. These are arguments appropriately made to the jury and to the state courts of appeals on direct appeal. They are not "new evidence" of actual innocence.

Wampler concludes his Traverse with the following argument:

> In his initial petition and in this Traverse petitioner has clearly defined multiple Constitutional violations. The proof of actual innocence lies in the following:
>
> 1). Petitioner was convicted of rape and aggravated murder, where rape was the aggravating factor; yet there was no proof that a rape ever even occurred.
>
> > (How can an American citizen be guilty of a crime when there is no proof that the crime even occurred?)
>
> 2). Respondent does not dispute the fact that prosecutors. – made inflammatory statements to lead the jury to deliver an unjust verdict.

8

>3). Respondent does not dispute the fact that prosecutors deliberately introduced perjured testimony to lead the jury to deliver an unjust verdict.
>
>4). Respondent does not dispute the fact that the prosecution deliberately withheld exculpatory evidence from defense. Evidence that shows that david Rowell was not last seen alive with petitioner and evidence of manipulated evidence.

(Traverse, ECF No. 6, PageID 2280-81).

Petitioner evidently misconceives the function of the writ of habeas corpus. Filing a habeas corpus petition which accuses the prosecution of various constitutional violations at a trial completed over forty years ago does not open up all of those accusations to new litigation. For example, if Wampler has evidence of withholding evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that issue could have been raised in a petition for post-conviction relief under Ohio Revised Code § 2953.21, but Wampler has not done so. If the evidence at trial did not show that the victim was raped, that argument should have been made to the jury, but the Second District found there was sufficient evidence to support the rape conviction (Opinion, State Court Record, ECF No. 3, Ex. 15, PageID 334 ["pre-mortem anal tears"], 337, overruling assignment of error that the convictions were against the manifest weight of the evidence[3]).

**Conclusion**

Wampler's numerous constitutional claims ae barred from consideration on the merits by

---

[3] Wampler did not present a *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficiency of the evidence claim on direct appeal. He did, however, claim the verdicts were against the manifest weight of the evidence and the Second District's rejection of that claim implicitly rejects the lesser-included insufficiency claim. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

Petitioner's procedural defaults in presenting those claims to the Ohio courts. Wampler makes no attempt to show cause and prejudice to excuse those individual defaults. Instead, he claims his actual innocence should allow him to pass through the *Schlup* gateway. As detailed above, he has not met the miscarriage of justice/actual innocence requirements of *Schlup* with new evidence.

The Magistrate Judge therefore recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

December 2, 2024.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #